**KRIS A. MCLEAN**
**Assistant United States Attorney**
**W. ADAM DUERK**
**Special Assistant U.S. Attorney**
**U.S. Attorney's Office**
**105 E. Pine Street**
**Missoula, MT 59802**
**Phone: (406) 542-8851**
**FAX: (406) 542-1476**
**Email: Kris.McLean@usdoj.gov**
**Email: Adam.Duerk@usdoj.gov**



FILED
DEC 21 2015
Clerk, U S District Court
District Of Montana
Billings

**ATTORNEYS FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 15- 40 M- DLC** |
| **Plaintiff,** | **INDICTMENT** |
| **vs.** | **CONSPIRACY (Count 1)**<br>**18 U.S.C. § 371**<br>**(Penalty: Five years imprisonment,**<br>**$250,000 fine, and three years supervised**<br>**release)** |
| **GEORGE LESLIE MANLOVE** | |
| **Defendant.** | **WIRE FRAUD (Counts 2-125)**<br>**18 U.S.C. §§ 1343, 2**<br>**(Penalty: 20 years imprisonment, $250,000**<br>**fine, and three years supervised release)** |
| | **BANK FRAUD (Counts 126-127)**<br>**18 U.S.C. §§ 1344, 2**<br>**(Penalty: 30 years imprisonment,**<br>**$1,000,000 fine, and 5 years supervised**<br>**release)** |

|  | **FALSE STATEMENT TO FEDERALLY INSURED BANK (Counts 128-131)** 18 U.S.C. §§ 1014, 2 (Penalty: 30 years imprisonment, $1,000,000 fine, and 5 years supervised release)

**BANKRUPTCY FRAUD (Counts 132-135)** 18 U.S.C. §§ 152(4)(5) and (7); 2 (Penalty Five years imprisonment, $250,000 fine, and 3 years supervised release)

**MONEY LAUNDERING (Counts 136-221)** 18 U.S.C. §§ 1956, 1957, 2 (Penalty: Ten years imprisonment, $250,000 fine or twice the amounts involved in the transactions, and 3 years supervised release)

**FORFEITURE ALLEGATIONS** Title 18 U.S.C. § 981(a)(1)(c); 28 U.S.C. § 2461(c) Title 18 U.S.C. § 982(a)(1) Title 18 U.S.C. § 982(a)(2)(A) |
|---|---|

THE GRAND JURY CHARGES:

## BACKGROUND

At all times material to this Indictment:

1.     Defendant GEORGE LESLIE MANLOVE ("MANLOVE") was the Chief Executive Officer ("CEO") and Uncharged Co-conspirator Paul Lyn Nisbet ("Nisbet") was the Chief Financial Officer ("CFO") of Vann's, Inc.

2.     Vann's, Inc. ("Vann's") was a Montana Corporation that owned and operated retail electronics and appliance stores in Montana.  Vann's was

owned by its employees through an employee Stock Ownership Plan ("ESOP").

3. This ESOP was intended to provide Vann's employees with funds for retirement.

4. Vann's was managed by a five-member Board of Directors, with three independent members plus MANLOVE and Nisbet. The Board hired Defendant MANLOVE to run the day-to-day operations of the company.

5. As part of the Board's responsibilities, the Board approved the overall compensation package for MANLOVE, including salary, bonuses, and fringe benefits.

6. Although MANLOVE was authorized to make expenditures on behalf of the company as part of running its day-to-day operations, MANLOVE was not authorized to change the amount of his salary, benefits or compensation package.

7. Furthermore, prior to making any material transaction involving Vann's funds, the Board required that it would be fully informed of any use of funds that was not an "arms-length" transaction, presented a conflict of interest, or appeared to be an expenditure for personal gain.

8. On March 30, 2007, the Board of Directors resolved that "any material transaction between related parties and transactions outside the ordinary

course of business be approved by the Board before such transactions are entered into."

9.    In addition to a base salary of at least $200,000, MANLOVE'S compensation package at Vann's included a bonus program that provided incentives for meeting or exceeding profit goals for the company as a whole.

10.   That incentive program stated that MANLOVE could receive a bonus of up to 40% of his base compensation if profit and sales targets were met, a 45% bonus if they were significantly exceeded and a pro-rata reduction if these targets were not met.

11.   From the time that MANLOVE became CEO of Vann's on March 31, 2006, until June 11, 2012 (when the Board of Directors asked him to resign), MANLOVE received bonuses of between $80,000 and $100,000 per year.

12.   In order to effectively direct and oversee Vann's, the Board required that MANLOVE and Nisbet provide a complete and accurate picture of the financial status of the company.

13.   To accomplish this, MANLOVE and Nisbet had a duty to inform the Board of any significant changes in Vann's financial status, inform the Board of any significant corporate gains, losses or expenditures, and forward to the Board complete and accurate financial records.

4

14.   It was the duty of both MANLOVE and Nisbet to ensure that the Board was fully and accurately informed regarding the financial status of the company.

15.   On or about July 14, 2011, two of the independent Board members resigned from the Vann's board, citing a lack of transparency and poor communication as reasons for their departure.

16.   On or about October 3, 2011, the third independent board member resigned.

17.   MANLOVE and Nisbet, in addition to serving as officers of the company, were designated as Trustees and Fiduciaries of the Vann's ESOP plan.

18.   As Trustees, MANLOVE and Nisbet had a fiduciary duty to ensure that all ESOP assets were managed properly.

19.   A "fiduciary" is defined as an individual in whom another has placed the utmost trust and confidence to manage and protect property or money.  It is a relationship wherein one person has an obligation to act for another's benefit.

20.   As fiduciaries of the ESOP, MANLOVE and Nisbet were in a position of trust, tasked with the responsibility of safeguarding the assets of the ESOP and acting solely in the interest of Vann's shareholders.

21.   On August 5, 2012, Vann's filed for bankruptcy under Chapter 11.

**COUNT 1**
**Conspiracy**

5

22.   Paragraphs 1 through 21 are incorporated by reference as if set forth in full.

23.   Beginning in approximately January 2006, and continuing until approximately February 15, 2013, at Missoula, in the State and District of Montana , and elsewhere, the defendant, GEORGE LESLIE MANLOVE and unindicted coconspirator Paul Lyn Nisbet, did knowingly combine, conspire, confederate and agree among themselves:

### OBJECT OF THE CONSPIRACY

24.   To knowingly defraud Vann's, its shareholders, the beneficiaries of the Vann's ESOP, First Interstate Bank, Treasure State Bank, the bankruptcy Estate of Vann's as well as other creditors, lenders, and former employees of Vann's of its assets for the personal gain of both conspirators by committing offenses against the laws of the United States, those being wire fraud, bank fraud, false statements, bankruptcy fraud, money laundering and aiding and abetting the same, all in violation of 18 U.S.C. § 1343, 18 U.S.C. § 1344, 18 U.S.C. § 1014, 18 U.S.C. § 152, 18 U.S.C. § 1956, 18 U.S.C. §1957, and 18 U.S.C. § 2.

25.   It was a purpose of the conspiracy to conceal and misrepresent the ongoing schemes perpetrated by the conspirators, thereby avoiding detection and enriching MANLOVE and Nisbet.

26.   It was a purpose of the conspiracy to conceal and misrepresent the true financial condition and status of Vann's in order to avoid detection of the defendants' fraudulent acts, thereby prolonging the period of the schemes to defraud and increasing the personal benefits of both conspirators.

## MANNER AND MEANS OF THE CONSPIRACY

The following manner and means, among others, were used by the defendant, GEORGE LESLIE MANLOVE and unindicted coconspirator Paul Lyn Nisbet, to effectuate and perpetrate the conspiracy set forth above:

27.   It was part of the conspiracy that the conspirators obtained knowledge and were aware of the true financial condition of Vann's at all times material to this Indictment.

28.   It was part of the conspiracy that the conspirators concealed the full extent of their knowledge of the financial condition of Vann's and withheld information regarding the full extent of Vann's financial condition from shareholders, employees, ESOP plan participants, Vann's creditors, lenders, First Interstate Bank ("FIB"), Treasure State Bank ("TSB") and Vann's Board of Directors.

29.   It was part of the conspiracy that the conspirators used their official positions within the company to obtain loans using Vann's assets as collateral and spend corporate assets for their own personal benefit.

7

30.     It was part of the conspiracy that the conspirators falsely described,

        concealed from, and failed to reveal to shareholders, employees, ESOP plan

        participants, Vann's creditors, FIB, and Vann's Board of Directors the full

        extent and true nature of the financial transactions involving the expenditure

        of Vann's corporate assets.

31.     It was part of the conspiracy that the conspirators created third-party "shell"

        companies (the "LLC's") in order to obtain loans to purchase the real

        property in Helena (the "Helena Store") and the Missoula Outlet ("the Outlet

        Store") and then "lease" those properties back to Vann's for their personal

        benefit without Board approval.

32.     It was part of the conspiracy that the conspirators, in the course of obtaining

        loans for the purchase of the Helena Store and the Outlet Store, made

        statements and submitted false information to loan officers at FIB and TSB

        that signed lease agreements existed between Vann's and the independent

        third-party LLC's owned and operated by the conspirators.

33.     It was part of the conspiracy that the conspirators converted Vann's funds

        and assets into personal benefit, to include: personal credit card charges,

        travel expenses, personal property, jewelry, job-search expenses, MBA

        tuition and related expenses, club memberships, and unauthorized sales

        commissions.

34.    It was part of the conspiracy that the conspirators engaged in what is
       commonly known as "off-balance sheet financing" in order to produce
       financial statements showing that the company was in a healthier financial
       position than reality. By misrepresenting Vann's financial position, the
       conspirators maintained a larger line of credit ("LOC"), borrowed money
       from banks, and avoided scrutiny from the Board of Directors and
       shareholders.

## OVERT ACTS

       In furtherance of the conspiracy and to affect its objects, the defendant,
GEORGE LESLIE MANLOVE and unindicted coconspirator Paul Lyn Nisbet,
committed numerous overt acts in the District of Montana and elsewhere,
including, but not limited to, the following:

## JPEG and the Outlet Store

35.    On or about March 19, 2007, MANLOVE and Nisbet formed JPEG, LLC,
       each contributing capital in the amount of $250 to form this company.

36.    On or about April 11, 2007, without board authority, Nisbet executed a
       "lease" between Vann's and JPEG, in which Vann's agreed to lease real
       estate known as the "Outlet Store" at Missoula, Montana .

9

37. On or about April 24, 2007, on behalf of JPEG, Nisbet and MANLOVE obtained a loan from Treasure State Bank in the amount of $1,412,000 to purchase the Outlet Store.

38. On or about April 24, 2007, MANLOVE and Nisbet on behalf of JPEG, submitted to Treasure State Bank a Deed of Trust for the Outlet Store as well as an Assignment of Rents contract signed by both MANLOVE and Nisbet as security for the loan.

39. On or about June 1, 2007, at Nisbet and MANLOVE's direction, Vann's began making monthly lease payments of $15,900 to JPEG, LLC for the Outlet Store, resulting in MANLOVE and Nisbet receiving approximately $906,300 from June 2007 through March 2012, including 12 monthly lease payments totaling approximately $190,800 after the store had closed in February 2011 .

## Painted Sky and the Helena Store

40. On or about April 11, 2007, MANLOVE and his wife J.M. (name withheld to protect identity) formed Painted Sky, LLC, with each contributing capital of $250 to form this company.

41. On or about September 4, 2007, at MANLOVE and Nisbet's direction, Vann's purchased real estate known as the "Helena Store" at Helena, Montana for $725,000.

42.  At MANLOVE and Nisbet's direction, Vann's then paid for construction
     and improvements on the building, which, with vendor contributions,
     increased Vann's total investment in the Helena Store to $2,896,533.

43.  On or about October 7, 2008, at NIisbet and MANLOVE's direction, Vann's
     began making monthly payments of $17,400 to Painted Sky, LLC for the
     Helena Store.

44.  On September 7, 2008, MANLOVE sent an email to B.H. (name withheld to
     protect privacy) and two other board members with proposed terms of a
     lease between Vann's and "Lessor GEORGE LESLIE and J. Manlove (name
     withheld to protect privacy)LLC."

45.  On September 17, 2008, B.H. replied back that he had no problem with the
     lease as long as "the transaction is at arms-length."

46.  On September 17, 2008, on behalf of Painted Sky, LLC, MANLOVE and
     his wife, J.M., signed and submitted a "Business Loan Agreement" to obtain
     a loan from First Interstate Bank in the amount of $2,117,850.50 to purchase
     the Helena Store.

47.  On or about September 17, 2008, MANLOVE and his wife, J.M., signed and
     submitted to First Interstate Bank both a "Deed of Trust" on the real estate
     as well as an "Assignment of Rents" contract signed by both MANLOVE

11

and his wife. J.M., as referenced in the "Business Loan Agreement" as
security for the loan.

48.   From these loan proceeds, MANLOVE and Nisbet used $1 million to pay
      off Vann's construction loan and $998,000 to pay down Vann's revolving
      line of credit.

49.   From these loan proceeds, on September 17, 2008, MANLOVE used
      $100,000 to pay down his own individual Home Equity Line of Credit.

50.   From October 2008 through September 2012, at MANLOVE and Nisbet's
      direction, Vann's made monthly lease payments to Painted Sky in the
      amount of $15,400 to $17,400, resulting in MANLOVE receiving a total of
      approximately $819,200, including six monthly lease payments totaling
      approximately $92,400 after the Helena Store had closed in March 2012.

## Bank Fraud and False Statements
## JPEG

51.   On or about April 24, 2007, Nisbet and MANLOVE, on behalf of JPEG,
      LLC, obtained a loan from Treasure State Bank in the amount of $1,412,000
      for the purchase of the Outlet Building, by submitting an "assignment of
      rents" signed by both MANLOVE and Nisbet as principals of JPEG, LLC.

52.   On or about April 24, 2007, Nisbet and MANLOVE, on behalf of JPEG,
      LLC, falsely represented to Treasure State Bank that there was a valid
      signed lease agreement between JPEG, LLC and Vann's.

53.   On March 4, 2008, Nisbet wrote to C.R. (name withheld to protect privacy) at an accounting firm in an email that "We do not have signed leases for Bozeman, Lolo or the Outlet . . . ."

54.   On or about June 30, 2008, Nisbet and MANLOVE, on behalf of JPEG, LLC, refinanced the loan for the purchase of Vann's Outlet Store through First Interstate Bank by falsely representing to First Interstate Bank that there was a valid lease between Vann's and JPEG, LLC.

55.   On or about March 2, 2011, Nisbet provided a chart to First Interstate Bank that included misrepresentations regarding Vann's leases with JPEG, LLC and Painted Sky, LLC.

**Painted Sky**

56.   On or about September 17, 2008, MANLOVE, on behalf of Painted Sky, LLC, obtained a loan from First Interstate Bank in the amount of $2,117,850.50 for the purchase of the Helena Store by submitting a first deed of trust and "lease assignment of rents" signed by MANLOVE as a principal of Painted Sky, LLC.

57.   On or about September 17, 2008 MANLOVE, on behalf of Painted Sky, LLC, falsely represented to First Interstate Bank that there was a valid signed lease agreement between Painted Sky, LLC and Vann's, Inc.

**Kellogg MBA degree and "Job Interviews"**

58. On or about September 2009, MANLOVE, enrolled in a Master's in Business Administration degree program at the Kellogg School of Business at Northwestern University in Illinois.

59. Between September 2009 and June 2011, MANLOVE, aided, abetted and assisted by Nisbet, without Board approval, caused Vann's to pay all tuition and expenses for the degree program.

60. On May 2, 2011, MANLOVE caused Vann's to pay $120 to Theladders.com, a website service that boasts "The Most $100K + Jobs."

61. On May 11, 2011, MANLOVE sent an email to Vann's senior management stating that he was not leaving Vann's.

62. On May 11, 2011, MANLOVE caused Vann's to pay $695 to The Ladders.

63. On June 20, 2011, MANLOVE wrote an email to J.M. (name withheld to protect identity), stating: "I have decided to open the next chapter of my life and am planning my exit from our company." MANLOVE further wrote that he had been approached by many companies looking for an exceptional leader.

64. On June 27, 2011, MANLOVE sent his resume to Amazon, applying for a senior executive position.

65. On September 27, 2011, MANLOVE sent an email to the President/Broker and "Certified Business Coach" of a Business Services company in the

resort town of Park City, UT.  The signature line in the email identified

MANLOVE as a "George L. Manlove, MBA – Successful Entrepreneur and

Internet Visionary – Park City, Utah."  MANLOVE's email stated: "My

wife and I have recently built a new home in Park City and have relocated to

PC from Montana.  I have been looking for a business to purchase or a start-

up partnership opportunity… I am also open to financial services, especially

Private Equity, VC or Private Wealth Management and would consider a

lifestyle business in the Park City area."

**Unauthorized Personal Expenses**
**Credit Card Charges**

66.    MANLOVE, starting in 2006 and continuing into 2012, without Board

authority, made purchases for personal goods and services that he charged to

Vann's credit card, or submitted to Vann's for reimbursement, including:  a

class ring; airfare for family trips; hotel and travel expenses for a

mother/daughter shopping trip to New York City; vacation expenses;

personal expenses for a move to Park City, Utah; and tuition payments and

other personal expenses while attending the Kellogg School of Business at

Northwestern University.  *See* Exhibit A, attached and incorporated herein

by reference.

**Club Memberships**

67.   On June 19, 2008, Nisbet issued a $50,000 Vann's check to the Rock Creek
      Cattle Company (known hereafter as "RCCC") for MANLOVE'S initial
      club membership fee.

68.   On June 27, 2011, MANLOVE and Nisbet, without Board authorization,
      caused Vann's to pay a $6,000 annual fee for MANLOVE'S ongoing RCCC
      membership and continued to pay these fees from September 9, 2008, until
      June 27, 2011, for a total of $22,550.

69.   On June 30, 2009, Nisbet and MANLOVE, without board authorization,
      caused Vann's to pay Ranch Club membership dues for MANLOVE and
      Nisbet in monthly payments for a total amount exceeding $6,000.

### Jewelry

70.   On or about September 30, 2009, MANLOVE, without board authorization,
      traded jewelry store owner R.E. (name withheld to protect identity) $18,750
      worth of Vann's services and goods for jewelry.  This jewelry included a
      pair of princess cut diamond solitaire earrings valued at $11,750 and a Rolex
      GMT watch valued at $7,000.

### Family Benefits

71.   For tax years 2008 and 2009, MANLOVE caused Vann's to hire his
      daughter, C.M. (name withheld to protect privacy) and pay her

compensation totaling $8,462.60 in 2008 and $6,634.35 in 2009.  During that same time frame, C.M. was living in Denver, Colorado.

72.   On or about June 8 through June 13, 2009, MANLOVE caused Vann's to pay in excess of $2,000 for his daughter, W.M. (name withheld to protect privacy) and his wife J.M. (name withheld to protect privacy) to fly to New York City and stay in a hotel off Park Avenue for five nights as part of a "mother/daughter week" of shopping.

### "Realtor" Commission

73.   On or about June 3, 2008, MANLOVE, without Board approval, caused Vann's to purchase Lot 45 at the Rock Creek Cattle Company, near Deer Lodge, Montana.

74.   MANLOVE obtained a commission of approximately $3,793 on this sale as the "licensed buyer's agent" from a local real estate company.

### Impending Bankruptcy

75.   On January 11, 2011, MANLOVE sent an email to Vann's management stating that company bonuses would only be paid out of operating surplus and requested across the board salary reductions for all exempt employees and hourly staff reduction and reduced staff hours.

76.   On February 4, 2011, MANLOVE sent an email to one of the internal bookkeepers at Vann's.  Nisbet received a copy of this email.  In the email,

MANLOVE asked "Are we heading for a train wreck?" The bookkeeper's response, sent later that day, stated: "It must come together this month and continue into March, or the train will run us down!"

77.     On May 1, 2011, Nisbet sent MANLOVE an email stating that cash was at a "critical point." MANLOVE responded by email that he was in class at Kellogg.

78.     On July 5, 2011, Nisbet emailed MANLOVE stating that Vann's line of credit was maxed and that "backs are against the wall."

79.     On July 14, 2011, MANLOVE emailed Nisbet and Vann's managers that Vann's is now in crisis mode.

80.     Despite both the defendants' knowledge of Vann's financial peril and imminent bankruptcy, MANLOVE and Nisbet continued to cause Vann's to make lease payments to JPEG, LLC and Painted Sky LLC, even after the Outlet Store and Helena Store stores went out of business at these locations.

81.     On February 15, 2013, MANLOVE, through counsel, filed a Proof of Claim in the Vann's bankruptcy case, Cause No. 12-61281-JLP, making a claim for $2,445,300, on the basis that Vann's had breached its contract with Painted Sky LLC for unpaid lease payments and other expenses.

All in violation of 18 U.S.C. § 371.

### COUNTS 2-125
### Wire Fraud

### The Scheme To Defraud

82.  Paragraphs 1 through 81 are incorporated by reference as if set forth in full.

83.  Beginning on approximately March 31, 2006, and continuing until on or about February 15, 2013, the defendant, GEORGE LESLIE MANLOVE and uncharged aider and abettor , Paul Lyn Nisbet, at Missoula and Helena, in the State and District of Montana, and elsewhere, executed a material scheme and artifice to defraud Vann's, Vann's former employees, the beneficiaries of the Employee Stock Ownership Plan, First Interstate Bank, Vann's other creditors and lenders, and the *Estate of Vann's, Inc.*, and to obtain money and property by means of materially false and fraudulent pretenses and representations.

### MANNER AND MEANS

84.  It was part of the scheme that the defendants obtained the money, funds and assets of Vann's, and others, by using their positions as Officers of Vann's to commit the acts as described above under the headings:

a.    Property Purchase and Leaseback

b.    Bank Fraud

c.    Kellogg MBA degree and "Job Interview"

d.    Unauthorized Personal Expenses

e.    Credit Card Charges

f.      Club Memberships

g.      Jewelry

h.      Family Benefits

i.      Realtor Commission

j.      Impending Bankruptcy

### COUNTS 2-89
### Personal Expenses
### The Wires

85.   Paragraphs 1 through 84 are incorporated by reference as if set forth in full.

86.   For the purpose of executing and attempting to execute the aforementioned material scheme and artifice to defraud, and for obtaining money and property by means of material false and fraudulent pretenses and representations, the defendant, GEORGE LESLIE MANLOVE and uncharged aider and abettor Paul Lyn Nisbet, did transmit and cause to be transmitted in interstate commerce by means of wire communications, certain writings, that is bank transfers and credit card payments, as described in Exhibit A, attached hereto and incorporated herein, each such instance being a separate and additional Count of this Indictment, in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2.

### COUNTS 90-110
### Leaseback Scheme - Painted Sky, LLC.
### The Wires

87.    Paragraphs 1 through 84 are incorporated by reference as if set forth in full.

88.    For the purpose of executing and attempting to execute the aforementioned

material scheme and artifice to defraud, and for obtaining money and

property by means of material false and fraudulent pretenses and

representations, GEORGE LESLIE MANLOVE and uncharged aider and

abettor Paul Lyn Nisbet, did transmit and cause to be transmitted in

interstate commerce by means of wire communications, certain writings, that

is bank transfers, as described below, each such instance being a separate

and additional Count of this Indictment, in violation of 18 U.S.C. § 343, and

18 U.S.C. § 2:

| Count | Date | Amount | From FIB Account # | To Account # |
|-------|------|--------|--------------------|--------------|
| 90 | 1/1/2011 | $17,400.00 | Ending In 9889 | Ending In 7200 |
| 91 | 2/1/2011 | $17,400.00 | 9889 | 7200 |
| 92 | 3/1/2011 | $17,400.00 | 9889 | 7200 |
| 93 | 4/1/2011 | $17,400.00 | 9889 | 7200 |
| 94 | 5/2/2011 | $17,400.00 | 9889 | 7200 |
| 95 | 6/1/2011 | $17,400.00 | 9889 | 7200 |
| 96 | 7/1/2011 | $17,400.00 | 9889 | 7200 |
| 97 | 8/1/2011 | $17,400.00 | 9889 | 7200 |
| 98 | 9/1/2011 | $17,400.00 | 9889 | 7200 |
| 99 | 10/3/2011 | $17,400.00 | 9889 | 7200 |
| 100 | 11/1/2011 | $17,400.00 | 9889 | 7200 |
| 101 | 12/1/2011 | $17,400.00 | 9889 | 7200 |
| 102 | 1/3/2012 | $17,400.00 | 9889 | 7200 |
| 103 | 2/1/2012 | $17,400.00 | 9889 | 7200 |
| 104 | 3/1/2012 | $15,400.00 | 9889 | 7200 |
| 105 | 4/2/2012 | $15,400.00 | 9889 | 7200 |
| 106 | 5/1/2012 | $15,400.00 | 9889 | 7200 |
| 107 | 6/1/2012 | $15,400.00 | 9889 | 7200 |
| 108 | 7/2/2012 | $15,400.00 | 9889 | 7200 |

| 109 | 8/2/2012 | $15,400.00 | 9889 | 7200 |
| 110 | 9/4/2012 | $15,400.00 | 9889 | 7200 |

## COUNTS 111-125
### Leaseback Scheme – JPEG, LLC
### The Wires

89.     Paragraphs 1 through 84 are incorporated by reference as if set forth in full.

90.     For the purpose of executing and attempting to execute the aforementioned

material scheme and artifice to defraud, and for obtaining money and

property by means of material false and fraudulent pretenses and

representations, GEORGE LESLIE MANLOVE and uncharged aider and

abettor Paul Lyn Nisbet, did transmit and cause to be transmitted in

interstate commerce by means of wire communications, certain writings, that

is bank transfers, as described below, each such instance being a separate

and additional Count of this Indictment, in violation of 18 U.S.C. § 1343 and

18 U.S.C. § 2.

| Count: | Date: | Amount: | From FIB Account #: | Transferred to TSB Account #: |
|--------|-------|---------|---------------------|-------------------------------|
| 111 | 12/31/2010 | $15,900.00 | Ending In 9889 | Ending In 1013 |
| 112 | 1/31/2011 | $15,900.00 | 9889 | 1013 |
| 113 | 3/1/2011 | $15,900.00 | 9889 | 1013 |
| 114 | 3/31/2011 | $15,900.00 | 9889 | 1013 |
| 115 | 5/2/2011 | $15,900.00 | 9889 | 1013 |
| 116 | 5/31/2011 | $15,900.00 | 9889 | 1013 |
| 117 | 7/1/2011 | $15,900.00 | 9889 | 1013 |
| 118 | 8/1/2011 | $15,900.00 | 9889 | 1013 |
| 119 | 8/31/2011 | $15,900.00 | 9889 | 1013 |

22

| 120 | 10/3/2011 | $15,900.00 | 9889 | 1013 |
| 121 | 10/31/2011 | $15,900.00 | 9889 | 1013 |
| 122 | 12/1/2011 | $15,900.00 | 9889 | 1013 |
| 123 | 1/3/2012 | $15,900.00 | 9889 | 1013 |
| 124 | 1/31/2012 | $15,900.00 | 9889 | 1013 |
| 125 | 3/1/2012 | $15,900.00 | 9889 | 1013 |

## COUNT 126
## BANK FRAUD (Painted Sky, LLC)

91.   Paragraphs 1 through 90 are incorporated by reference as if set forth in full.

92.   Beginning on or about June 23, 2008, and continuing until on or about

March 2, 2011, at Missoula, in the District of Montana and elsewhere, the

defendant GEORGE LESLIE MANLOVE and uncharged aider and abettor

Paul Lyn Nisbet, did knowingly execute, and attempt to execute, a material

scheme and artifice to defraud a financial institution, and to obtain any of the

moneys, funds, credits, assets, securities and other property owned by, and

under custody or control of, a financial institution, by means of false and

fraudulent pretenses, representations or promises, as follows:

93.   On or about September 17, 2008, Nisbet and MANLOVE, on behalf of

Painted Sky, LLC, obtained a loan from First Interstate Bank, an insured

depository institution of the Federal Deposit Insurance Act in the amount of

$2,117,850.50, for the purchase of the Helena Store.

23

94.    The collateral on this loan was a first deed of trust and "lease assignment of
       rents" signed by MANLOVE as a principal of Painted Sky, LLC.

95.    On or about September 17, 2008, Nisbet falsely represented that there was a
       valid signed lease agreement between Painted Sky, LLC. and Vann's, for the
       Helena Store.

96.    No lease existed at the time the loan documents were signed, and no lease
       was ever approved by the Vann's Board of Directors.

97.    On or about February 18, 2011, First Interstate Bank requested information
       regarding Vann's leases.

98.    In response to the bank's request, on or about March 2, 2011, Nisbet
       provided a chart falsely representing that a valid lease was in existence
       between Painted Sky, LLC and Vann's for the Helena Store.

All in violation of 18 U.S.C. § 1344; and 18 U.S.C. § 2.

## COUNT 127
## BANK FRAUD (JPEG, LLC)

99.    Paragraphs 1 through 98 are incorporated by reference as if set forth in full.

100.   Beginning on or about April 24, 2007, and continuing until on or about
       March 2, 2011, at Missoula, in the District of Montana, and elsewhere, the
       defendant GEORGE LESLIE MANLOVE and uncharged aider and abettor
       Paul Lyn Nisbet, did knowingly execute, and attempt to execute, a material
       scheme and artifice to defraud a financial institution, and to obtain any of the

24

moneys, funds, credits, assets, securities and other property owned by, and under custody or control of, a financial institution, by means of false and fraudulent pretenses, representations or promises, as follows:

101. On or about April 24, 2007, Nisbet and MANLOVE, on behalf of JPEG, LLC, obtained a loan from Treasure State Bank, an insured depository institution of the Federal Deposit Insurance Act in the amount of $1,412,000 for the purchase of the Outlet Store.

102. As collateral on this loan, MANLOVE and Nisbet submitted an "assignment of rents" signed by both MANLOVE and Nisbet as principals of JPEG, LLC.

103. This loan agreement was based in part on the representation that there was a valid lease agreement between JPEG, LLC and Vann's for the Outlet Store.

104. No board-approved lease existed at the time the loan documents were signed, and no lease was ever approved by the Vann's Board of Directors.

105. On or about June 30, 2008, Nisbet and MANLOVE refinanced the loan for the purchase of the "Outlet Store" through First Interstate Bank.

106. While re-financing this loan, Nisbet misled First Interstate Bank by falsely representing that there was a valid signed lease between Vann's and JPEG, LLC.

25

107. On or about February 18, 2011, First Interstate Bank requested information from Vann's regarding Vann's leases.

108. In response to the bank's request, on or about March 2, 2011, Nisbet provided a chart falsely representing that a valid lease was in existence between JPEC, LLC and Vann's for the Outlet Store.

All in violation of 18 U.S.C. § 1344; and 18 U.S.C. § 2.

## COUNTS 128-131
## FALSE STATEMENTS

109. Paragraphs 1 through 108 are incorporated by reference as if set forth in full.

110. Beginning on or about April 24, 2007, and continuing until on or about March 2, 2011, at Missoula, in the District of Montana, and elsewhere, the defendant GEORGE LESLIE MANLOVE and uncharged aider and abettor Paul Lyn Nisbet, did make false statements knowing the same to be false, for the purpose of influencing in any way the actions of First Interstate Bank and Treasure State Bank, both federally insured lending institutions, as follows:

### COUNT 128

111. On or about April 24, 2007, Nisbet and MANLOVE, on behalf of JPEG, LLC, obtained a $1,412,000 loan from Treasure State Bank for the purchase of the Outlet Store based on signed statements submitted by Nisbet and

MANLOVE that there was a valid lease agreement between Vann's and JPEG, LLC for the Outlet Store.

## COUNT 129

112. On or about June 30, 2008, Nisbet and MANLOVE, on behalf of JPEG, LLC, refinanced the loan for the purchase of the Outlet Store in Missoula through First Interstate Bank by representing that there was a valid lease agreement between Vann's, Inc. and JPEG, LLC for the Outlet Store.

## COUNT 130

113. On or about September 17, 2008, MANLOVE, on behalf of Painted Sky, LLC, obtained a loan from First Interstate Bank in the amount of $2,117,850.50 for the purchase of the Helena Store, based on signed statements submitted by MANLOVE that there was a valid lease agreement in place between Vann's and Painted Sky, LLC for the Outlet Store.

## COUNT 131

114. On or about March 2, 2011, Nisbet and MANLOVE provided First Interstate Bank a chart that falsely represented that valid lease agreements existed between JPEG, LLC, and Vann's for the Outlet Store and Painted Sky, LLC and Vann's for the Helena Store.

All in violation of 18 U.S.C. § 1014; and 18 U.S.C. § 2.

## COUNT 132
## BANKRUPTCY FRAUD
### (False Proof of Claim)

115. Paragraphs 1 through 114 are incorporated by reference as if set forth in full.

116. On or about February 15, 2013, in the State and District of Montana, the defendant, GEORGE LESLIE MANLOVE, knowingly and fraudulently presented a false claim in the amount of $2,445,300 for proof against the estate of Vann's, cause number 12-61281-JLP, which sum purportedly was due by the debtor to the defendant's business entity, Painted Sky, LLC (MANLOVE), for lease payments and other amounts "due" under the terms of agreements between Painted Sky, LLC and Vann's, when in truth and in fact, as GEORGE LESLIE MANLOVE well knew, no such amounts were legitimately owed by the debtor, Vann's, all in violation of 18 U.S.C. § 152(4).

## COUNT 133
## BANKRUPTCY FRAUD
### (Painted Sky LLC, Rent Payment)

117. Paragraphs 1 through 116 are incorporated by reference as if set forth in full.

118. Beginning on or about August 5, 2012, and continuing through September 4, 2012, in the State and District of Montana, the defendant, GEORGE LESLIE MANLOVE, with the intent to defeat the provisions of Title 11, knowingly and fraudulently received a material amount of property from

Vann's, a debtor in *In the matter of Vann's Inc.*, Cause No. 12-61281-JLP, under Title 11, to wit: one monthly rental payment to Painted Sky, LLC in the amount of $15,400, all in violation of 18 U.S.C. § 152(5).

## COUNT 134
## BANKRUPTCY FRAUD
### (Anticipation of Bankruptcy – Painted Sky)

119. Paragraphs 1 through 118 are incorporated by reference as if set forth in full.

120. Beginning on or about April 1, 2012, and continuing through August 5, 2012, in the State and District of Montana, the defendant, GEORGE LESLIE MANLOVE, in contemplation of a bankruptcy case under Title 11 of the United States Code by Vann's, specifically the case entitled *Vann's, Inc.* Cause No. 12-61281-JLP, filed August 5, 2012, in the District of Montana, and with the intent to defeat the provisions of Title 11, knowingly and fraudulently transferred to Painted Sky, LLC, a corporation owned in part by GEORGE LESLIE MANLOVE, five months of lease payments at a rate of between $15,400.00 and $17,400.00 per month, all in violation of 18 U.S.C. § 152(7).

## COUNT 135
## BANKRUPTCY FRAUD
### (Anticipation of Bankruptcy – JPEG)

121. Paragraphs 1 through 120 are incorporated by reference as if set forth in full.

122. Beginning on or about March 31, 2011, and continuing through August 5, 2012, in Missoula, in the State and District of Montana, and elsewhere, the defendant GEORGE LESLIE MANLOVE and uncharged aider and abettor Paul Lyn Nisbet, in contemplation of a bankruptcy case under Title 11 of the United States Code by Vann's, specifically the case entitled *Vann's Inc.*, Cause No. 12-61281-JLP, filed August 5, 2012, in the District of Montana, and with the intent to defeat the provisions of Title 11, knowingly and fraudulently transferred to JPEG, LLC, a corporation owned in part by GEORGE LESLIE MANLOVE and Paul Lyn Nisbet, 12 months of lease payments at a rate of between $15,900.00 and $17,400 per month all in violation of 18 U.S.C. § 152(7) and 18 U.S.C. § 2.

## COUNTS 136-171
## MONEY LAUNDERING

123. Paragraphs 1 through 122 are incorporated by reference as if set forth in full.

124. Beginning on or about December 31, 2010, and continuing until on or about September 17, 2012, in the State and District of Montana, the defendant GEORGE LESLIE MANLOVE and uncharged aider and abettor Paul Lyn Nisbet, did knowingly conduct and attempt to engage in monetary transactions in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity, that is wire fraud, and that the monetary transactions took place in the United States.

125.  Each transaction in criminally derived property is set forth in Exhibit B, attached, and fully incorporated by reference, each such instance being a separate and additional Count of this Indictment, all in violation of 18 U.S.C. § 1957 and 18 U.S.C. § 2.

## COUNTS 172-221
## MONEY LAUNDERING

126.  Paragraphs 1 through 125 are incorporated by reference as if set forth in full.

127.  Beginning on or about January 3, 2011, in the District of Montana, the defendant, GEORGE LESLIE MANLOVE, did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, wire transfers as set out in Exhibit C, incorporated by reference, which involved the proceeds of a specified unlawful activity, that is a conspiracy to defraud Vann's and Wire Fraud, with the intent to promote the carrying on of specified unlawful activity, to wit: a leaseback scheme to defraud Vann's, and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity.

128.  Each transaction in criminally derived property is set forth in Exhibit C, attached, and fully incorporated by reference, each such instance being a separate and additional Count of this Indictment, all in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and 18 U.S.C. § 2.

## FIRST FORFEITURE ALLEGATION

129.   Upon conviction of the wire fraud offenses set forth in Counts 2-125 of this

Indictment, the defendant, GEORGE LESLIE MANLOVE, shall forfeit to

the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C.

§ 2461(c), any property, real or personal, which constitutes or is derived

from proceeds traceable to the offense.

If any property that constitutes or is derived from the proceeds traceable to

the offenses set forth in Counts 2-125:

   a.     Cannot be located upon the exercise of due diligence;

   b.     Has been transferred or sold to, or deposited with, a third party;

   c.     Had been placed beyond the jurisdiction of the Court;

   d.     Has been substantially diminished in value; or

   e.     Has been commingled with other property which cannot be divided

without difficulty, the United States of America shall be entitled to

forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as

incorporated by 28 U.S.C. § 2461(c).

## SECOND FORFEITURE ALLEGATION

130.   Upon conviction of the money laundering offenses set forth in Counts 136 -

221 of this Indictment, the defendant, GEORGE LESLIE MANLOVE, shall

forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property,

real and personal, involved in such offenses, and any property traceable to such property.

If any property that constitutes or is derived from the proceeds traceable to the offenses set forth in Counts 136 -221:

    f.  Cannot be located upon the exercise of due diligence;

    g.  Has been transferred or sold to, or deposited with, a third party;

    h.  Had been placed beyond the jurisdiction of the Court;

    i.  Has been substantially diminished in value; or

    j.  Has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

## THIRD FORFEITURE ALLEGATION

131.  Upon conviction of the bank fraud offenses set forth in Counts 126-131 of this Indictment, the defendant, GEORGE LESLIE MANLOVE, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting and derived from proceeds obtained directly and indirectly as a result of such violations.

If any property that constitutes or is derived from the proceeds traceable to the offenses set forth in Counts 126-131:

33

a.      Cannot be located upon the exercise of due diligence;

b.      Has been transferred or sold to, or deposited with, a third party;

c.      Had been placed beyond the jurisdiction of the Court;

d.      Has been substantially diminished in value; or

e.      Has been commingled with other property which cannot be divided

without difficulty, the United States of America shall be entitled to

forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as

incorporated by 28 U.S.C. § 2461(c).

A TRUE BILL.

Foreperson signature redacted.  Original document filed under seal.

MICHAEL W. COTTER
United States Attorney

JOSEPH E. THAGGARD
Criminal Chief Assistant U.S. Attorney

1-12-16 @ 1:30 p.m.
before JCL w
msla

Crim. Summons ✓

Warrant:

Bail:

34

## EXHIBIT "A"
## Individual Counts of Wire Fraud

| Count: | Date: | Purpose: | Payment to: | Amount: | Payment from: |
|---|---|---|---|---|---|
| 2. | 12/28/2010 | DELTA | SALT LAKE CTY UT | $710.80 | FIB CC |
| 3. | 12/29/2010 | FRESCA RESTAURANT #3 | SAN FRANCISCO CA | $114.24 | FIB CC |
| 4. | 1/2/2011 | THE CAPRICE RESTAURANT | TIBURON CA | $186.41 | FIB CC |
| 5. | 1/2/2011 | WESTIN SAN FRAN FD | SAN FRANCISCO CA | $167.62 | FIB CC |
| 6. | 1/3/2011 | DELTA | ATLANTA GA | $640.80 | FIB CC |
| 7. | 1/3/2011 | DELTA | ATLANTA GA | $796.80 | FIB CC |
| 8. | 1/3/2011 | DELTA | ATLANTA GA | $660.80 | FIB CC |
| 9. | 2/3/2011 | Kellogg MBA Tuition | EVANSTON IL | $30,667.00 | AMEX |
| 10. | 2/3/2011 | Kellogg MBA Expenses | EVANSTON IL | $843.34 | AMEX |
| 11. | 1/9/2011 | THE RANCH CLUB | 406-5321000 MT | $150.00 | FIB CC |
| 12. | 1/10/2011 | THAI SOOKDEE RESTAURAN | EVANSTON IL | $57.00 | FIB CC |
| 13. | 1/18/2011 | SIMPLY MAC #104 | COTTONWOOD HE UT | $100.39 | FIB CC |
| 14. | 1/19/2011 | RED LOBSTER US00006130 | MURRAY UT | $60.00 | FIB CC |
| 15. | 1/19/2011 | HOPPERS GRILL | MIDVALE UT | $48.55 | FIB CC |
| 16. | 1/21/2011 | SQUATTERS ROADHOUS | PARK CITY UT | $58.33 | FIB CC |
| 17. | 1/24/2011 | DELTA MINN/ | ST PAUL MN | $300.00 | FIB CC |
| 18. | 1/31/2011 | NU KELLOG ALLEN CTR2 7 | EVANSTON IL | $400.00 | FIB CC |
| 19. | 2/1/2011 | HILTON HOTEL F/D | EVANSTON IL | $112.42 | FIB CC |
| 20. | 2/7/2011 | THE RANCH CLUB | 406-5321000 MT | $150.00 | FIB CC |
| 21. | 3/3/2011 | TUITION/FEES | EVANSTON IL | $80.00 | AMEX |
| 22. | 3/3/2011 | TUITION/FEES | EVANSTON IL | $12.05 | AMEX |
| 23. | 4/3/2011 | CHEVRON EXTRA MART # | PARK CITY UT | $63.95 | AMEX |
| 24. | 3/7/2011 | ASSETS INVESTMENT INC | CHICAGO IL | $46.45 | FIB CC |
| 25. | 4/3/2011 | Kellogg MBA Tuition | EVANSTON IL | $24,666.00 | AMEX |
| 26. | 4/3/2011 | Kellogg MBA Expenses | SCHAUMBURG IL | $678.32 | AMEX |
| 27. | 4/3/2011 | DELTA AIR LINES | Atlanta | $936.80 | AMEX |
| 28. | 4/3/2011 | DELTA AIR LINES | ATLANTA | $936.80 | AMEX |
| 29. | 4/3/2011 | ENTERPRISE RENT A CA | SALT LAKE CITY UT | $56.09 | AMEX |
| 30. | 5/3/2011 | DEL TA AIR LINES | MIAMI LAKES FL | $720.81 | AMEX |
| 31. | 5/3/2011 | BESTBUY MHT 1761 | PARK CITY UT | $142.06 | AMEX |

| 32. | 4/18/2011 | MURRAY HEIGHTS00451450 | MURRAY UT | $76.20 | FIB CC |
|---|---|---|---|---|---|
| 33. | 4/17/2011 | DELTA | SALT LAKE CTY UT | $60.00 | FIB CC |
| 34. | 5/3/2011 | CHICAGO ELITE 6706 O | CHICAGO IL | $47.34 | AMEX |
| 35. | 5/3/2011 | HERFF JONES SCHOOL RING | INDIANAPOLIS | 1,124.57 | AMEX |
| 36. | 5/3/2011 | ENTERPRISE RENT A CA | SALT LAKE CITY UT | $92.02 | AMEX |
| 37. | 5/3/2011 | DELTA AIR LINES | ATLANTA | $573.60 | AMEX |
| 38. | 5/3/2011 | TUITION/FEES | EVANSTON IL | $80.00 | AMEX |
| 39. | 5/3/2011 | THELADDERS.COM | NEW YORK NY | 120.00 | AMEX |
| 40. | 6/3/2011 | Z TEJAS SALT LK CTY | SALT LAKE CITY UT | $69.25 | AMEX |
| 41. | 6/3/2011 | 7-ELEVEN 32751 00073 | DRAPER UT | $38.14 | AMEX |
| 42. | 6/3/2011 | THELADDERS.COM | NEW YORK NY | 695.00 | AMEX |
| 43. | 6/3/2011 | TUITION/FEES | EVANSTON IL | $80.00 | AMEX |
| 44. | 5/30/2011 | CLARK COUNTY 600307348 | DUBOIS ID | $67.14 | FIB CC |
| 45. | 6/3/2011 | NW University Bookstore | Evanston, IL | $40.49 | AMEX |
| 46. | 6/3/2011 | PARK WEST7-11 TES04PARK CITY | PARK CITY UT | $84.76 | AMEX |
| 47. | 7/3/2011 | CHIMAYO RESTAURANTCPARKCITY | PARK CITY UT | $120.12 | AMEX |
| 48. | 6/13/2011 | NORSHORE CAB CO. | Evanston, IL | $55.00 | FIB CC |
| 49. | 6/13/2011 | DELTA | DALLAS TX | $193.00 | FIB CC |
| 50. | 6/14/2011 | NORSHORE CAB CO. | EVANSTON IL | $55.00 | FIB CC |
| 51. | 6/15/2011 | HOLIDAY INN EXPRESS | PARK CITY UT | $118.10 | FIB CC |
| 52. | 6/14/2011 | ENTERPRISE RENT-A-CAR | SALT LAKE CIT UT | $60.70 | FIB CC |
| 53. | 6/19/2011 | CLARK COUNTY 600307348 | DUBOIS ID | $54.35 | FIB CC |
| 54. | 7/3/2011 | SLC INTERNATIONAL AI | SALT LAKE CITY UT | $140.00 | AMEX |
| 55. | 7/3/2011 | IHG PKCTYPMS PARK CITY | PARK CITY UT | $194.86 | AMEX |
| 56. | | RCCC Dues | MT | $6,000.00 | Vann's FIB xxxxxx9889 |
| 57. | 8/3/2011 | PARK WEST7-11 TES04PARKCITY | PARK CITY UT | $65.33 | AMEX |
| 58. | 7/28/2011 | WINDY RIDGE CAFE | PARK CITY UT | $100.19 | FIB CC |
| 59. | 8/3/2011 | DIAMOND WIRELESS 111 PARK CITY | PARK CITY UT | $53.16 | AMEX |
| 60. | 8/3/2011 | RED ROCK BREWING COMSALT LAKE CITY | SALT LAKE CITY UT | $192.51 | AMEX |
| 61. | 9/2/2011 | TEXACO WIND RIVER PEPARKCITY UT | PARK CITY UT | $104.96 | AMEX |

| | | | | | |
|---|---|---|---|---|---|
| 62. | 9/2/2011 | TEXACO WIND RIVER PE | PARK CITY UT | $76.65 | AMEX |
| 63. | 9/2/2011 | Apex 372649 Park City UT | PARK CITY UT | $131.49 | AMEX |
| 64. | 9/2/2011 | TEXACO WIND RIVER PEPARKCITY | PARK CITY UT | $83.80 | AMEX |
| 65. | 11/3/2011 | TEXACO WIND RIVER PEPARKCITY | PARK CITY UT | $56.66 | AMEX |
| 66. | 10/19/2011 | CHEVRON 0306751 IDAHO FALLS ID | IDAHO FALLS ID | $59.79 | FIB CC |
| 67. | 12/2/2011 | WHOLEFDS PKC 10440 043557 50200 | PARK CITY UT | $173.93 | AMEX |
| 68. | 11/3/2011 | THELADDERS.COM 866-937-1005 NY | NEW YORK NY | 180.00 | AMEX |
| 69. | 12/2/2011 | DELTA AIR LINES ATLANTA | ATLANTA | $483.40 | AMEX |
| 70. | 12/2/2011 | DELTA AIR LINES ATLANTA | ATLANTA | $179.40 | AMEX |
| 71. | 11/21/2011 | WWW.LINKEDIN.COM | MOUNTAIN VIEW CA | $499.50 | FIB CC |
| 72. | 12/1/2011 | DELTA | SAN ANTONIO TX | $362.40 | FIB CC |
| 73. | 1/3/2012 | TEXACO WIND RIVER PEPARK CITY | PARK CITY UT | $61.54 | AMEX |
| 74. | 1/3/2012 | PARK CITY CHAMBER BU435-6496100 | PARK CITY UT | $229.00 | AMEX |
| 75. | 1/3/2012 | WINDY RIDGE CAFE 4 WPARK CITY | PARK CITY UT | $65.99 | AMEX |
| 76. | 1/2/2012 | DELTA | DELTA.COM CA | $984.20 | FIB CC |
| 77. | 1/2/2012 | UNITED | SAN ANTONIO TX | $386.10 | FIB CC |
| 78. | 2/3/2012 | DELTA AIR LINES ATLANTA | ATLANTA | $560.80 | AMEX |
| 79. | 2/3/2012 | STAPLES 00835 PARK CITY UT | PARK CITY UT | $71.70 | AMEX |
| 80. | 2/3/2012 | TEXACO WIND RIVER PEPARKCITY | PARK CITY UT | $69.82 | AMEX |
| 81. | 2/3/2012 | THE UPS STORE 1372 PARK CITY UT | PARK CITY UT | $265.00 | AMEX |
| 82. | 4/3/2012 | THE UPS STORE 3471 PARK CITY UT | PARK CITY UT | $92.01 | AMEX |
| 83. | 4/3/2012 | BEST BUY CO 527 SALT LAKE CITY UT | SALT LAKE CITY UT | $109.08 | AMEX |
| 84. | 4/3/2012 | STAPLES 00835 PARK CITY UT | PARK CITY UT | $247.80 | AMEX |
| 85. | 4/3/2012 | ENTERPRISE RENT A CASALT LAKE CITY | SALT LAKE CITY UT | $486.45 | AMEX |
| 86. | 5/3/2012 | LUXE TRAVEL BOCA RATON FL | BOCA RATON FL | 182.60 | AMEX |

3

| | | | | | |
|---|---|---|---|---|---|
| **87.** | 5/3/2012 | LUXE TRAVEL BOCA RATON FL | BOCA RATON FL | 35.00 | AMEX |
| **88.** | 5/3/2012 | LUXE TRAVEL BOCA | BOCA RATON FL | 545.90 | AMEX |
| **89.** | 5/3/2012 | CHEVRON EXTRA MART #PARK CITY | PARK CITY UT | $94.42 | AMEX |

4

**EXHIBIT "B"**
**Individual Counts of Money Laundering**

### Lease Payments (Painted Sky)

| Count: | Date: | Amount: | Payment to FIB: | Payment from FIB: |
|---|---|---|---|---|
| 136. | 1/5/2011 | $13,736.87 | xxxxxx6590 | xxxxxxx7200 |
| 137. | 2/7/2011 | $13,736.87 | xxxxxx6590 | xxxxxxx7200 |
| 138. | 3/7/2011 | $13,736.87 | xxxxxx6590 | xxxxxxx7200 |
| 139. | 4/5/2011 | $13,736.87 | xxxxxx6590 | xxxxxxx7200 |
| 140. | 5/5/2011 | $13,736.87 | xxxxxx6590 | xxxxxxx7200 |
| 141. | 6/6/2011 | $13,736.87 | xxxxxx6590 | xxxxxxx7200 |
| 142. | 7/5/2011 | $13,736.87 | xxxxxx6590 | xxxxxxx7200 |
| 143. | 8/5/2011 | $13,736.87 | xxxxxx6590 | xxxxxxx7200 |
| 144. | 9/6/2011 | $13,736.87 | xxxxxx6590 | xxxxxxx7200 |
| 145. | 10/5/2011 | $13,736.87 | xxxxxx6590 | xxxxxxx7200 |
| 146. | 11/7/2011 | $13,736.87 | xxxxxx6590 | xxxxxxx7200 |
| 147. | 12/5/2011 | $13,736.87 | xxxxxx6590 | xxxxxxx7200 |
| 148. | 1/5/2012 | $13,736.87 | xxxxxx6590 | xxxxxxx7200 |
| 149. | 2/6/2012 | $13,736.87 | xxxxxx6590 | xxxxxxx7200 |
| 150. | 3/5/2012 | $13,736.87 | xxxxxx6590 | xxxxxxx7200 |
| 151. | 4/5/2012 | $13,736.87 | xxxxxx6590 | xxxxxxx7200 |
| 152. | 5/7/2012 | $13,736.87 | xxxxxx6590 | xxxxxxx7200 |
| 153. | 6/5/2012 | $13,736.87 | xxxxxx6590 | xxxxxxx7200 |
| 154. | 7/5/2012 | $13,736.87 | xxxxxx6590 | xxxxxxx7200 |
| 155. | 8/6/2012 | $13,736.87 | xxxxxx6590 | xxxxxxx7200 |
| 156. | 9/5/2012 | $13,736.87 | xxxxxx6590 | xxxxxxx7200 |

### Lease Payments (JPEG)

| Count: | Date: | Amount: | From Account #: | Transferred to Account #: |
|---|---|---|---|---|
| 157. | 1/5/2011 | $11,300.00 | TSB xxxxx1013 | FIB Loan xxxxxx6464 |
| 158. | 2/7/2011 | $11,300.00 | TSB xxxxx1013 | FIB Loan xxxxxx6464 |
| 159. | 3/7/2011 | $11,300.00 | TSB xxxxx1013 | FIB Loan xxxxxx6464 |
| 160. | 4/5/2011 | $11,300.00 | TSB xxxxx1013 | FIB Loan xxxxxx6464 |
| 161. | 5/5/2011 | $11,300.00 | TSB xxxxx1013 | FIB Loan xxxxxx6464 |
| 162. | 6/6/2011 | $11,300.00 | TSB xxxxx1013 | FIB Loan xxxxxx6464 |
| 163. | 7/5/2011 | $11,300.00 | TSB xxxxx1013 | FIB Loan xxxxxx6464 |
| 164. | 8/5/2011 | $11,300.00 | TSB xxxxx1013 | FIB Loan xxxxxx6464 |

| 165. | 9/6/2011 | $11,300.00 | TSB xxxxx1013 | FIB Loan xxxxxx6464 |
|------|----------|------------|---------------|---------------------|
| 166. | 10/5/2011 | $11,300.00 | TSB xxxxx1013 | FIB Loan xxxxxx6464 |
| 167. | 11/7/2011 | $11,300.00 | TSB xxxxx1013 | FIB Loan xxxxxx6464 |
| 168. | 12/5/2011 | $11,300.00 | TSB xxxxx1013 | FIB Loan xxxxxx6464 |
| 169. | 1/5/2012 | $11,300.00 | TSB xxxxx1013 | FIB Loan xxxxxx6464 |
| 170. | 2/6/2012 | $11,300.00 | TSB xxxxx1013 | FIB Loan xxxxxx6464 |
| 171. | 3/5/2012 | $11,300.00 | TSB xxxxx1013 | FIB Loan xxxxxx6464 |

## EXHIBIT "C"
## Individual Counts of Money Laundering

### Lease Payments (Painted Sky)

| Count: | Date: | Amount: | Payment to FIB: | Payment from FIB: |
|---|---|---|---|---|
| 172. | 1/18/2011 | $2,930.35 | xxxxxxxxxx1385 | xxxxxxxxxx7200 |
| 173. | 2/15/2011 | $2,930.35 | xxxxxxxxxx1385 | xxxxxxxxxx7200 |
| 174. | 3/15/2011 | $2,930.35 | xxxxxxxxxx1385 | xxxxxxxxxx7200 |
| 175. | 4/15/2011 | $2,930.35 | xxxxxxxxxx1385 | xxxxxxxxxx7200 |
| 176. | 5/16/2011 | $2,930.35 | xxxxxxxxxx1385 | xxxxxxxxxx7200 |
| 177. | 6/15/2011 | $2,930.35 | xxxxxxxxxx1385 | xxxxxxxxxx7200 |
| 178. | 7/15/2011 | $2,930.35 | xxxxxxxxxx1385 | xxxxxxxxxx7200 |
| 179. | 8/15/2011 | $2,930.35 | xxxxxxxxxx1385 | xxxxxxxxxx7200 |
| 180. | 9/15/2011 | $2,930.35 | xxxxxxxxxx1385 | xxxxxxxxxx7200 |
| 181. | 10/17/2011 | $2,930.35 | xxxxxxxxxx1385 | xxxxxxxxxx7200 |
| 182. | 11/15/2011 | $2,930.35 | xxxxxxxxxx1385 | xxxxxxxxxx7200 |
| 183. | 12/15/2011 | $2,930.35 | xxxxxxxxxx1385 | xxxxxxxxxx7200 |
| 184. | 1/17/2012 | $2,930.35 | xxxxxxxxxx1385 | xxxxxxxxxx7200 |
| 185. | 2/15/2012 | $2,930.35 | xxxxxxxxxx1385 | xxxxxxxxxx7200 |
| 186. | 3/15/2012 | $2,930.35 | xxxxxxxxxx1385 | xxxxxxxxxx7200 |
| 187. | 4/16/2012 | $2,930.35 | xxxxxxxxxx1385 | xxxxxxxxxx7200 |
| 188. | 5/15/2012 | $2,930.35 | xxxxxxxxxx1385 | xxxxxxxxxx7200 |
| 189. | 6/15/2012 | $2,930.35 | xxxxxxxxxx1385 | xxxxxxxxxx7200 |
| 190. | 7/16/2012 | $2,930.35 | xxxxxxxxxx1385 | xxxxxxxxxx7200 |
| 191. | 8/15/2012 | $2,930.35 | xxxxxxxxxx1385 | xxxxxxxxxx7200 |
| 192. | 9/17/2012 | $2,930.35 | xxxxxxxxxx1385 | xxxxxxxxxx7200 |

### Lease Payments (JPEG)

| Count: | Date: | Amount: | From Account #: | Transferred to Account #: |
|---|---|---|---|---|
| 193. | 1/3/2011 | $2,300.00 | TSB xxxxx1013 | xxxxxx1351 Painted Sky |
| 194. | 1/3/2011 | $2,300.00 | TSB xxxxx1013 | FIB xxxxxx8861 |
| 195. | 2/3/2011 | $2,300.00 | TSB xxxxx1013 | FIB xxxxxx8861 |
| 196. | 2/3/2011 | $2,300.00 | TSB xxxxx1013 | xxxxxx1351 Painted Sky |
| 197. | 3/3/2011 | $2,300.00 | TSB xxxxx1013 | FIB xxxxxx8861 |
| 198. | 3/3/2011 | $2,300.00 | TSB xxxxx1013 | xxxxxx1351Painted Sky |
| 199. | 4/4/2011 | $2,300.00 | TSB xxxxx1013 | FIB xxxxxx8861 |
| 200. | 4/4/2011 | $2,300.00 | TSB xxxxx1013 | xxxxxx1351 Painted Sky |

1

| | | | | |
|---|---|---|---|---|
| 201. | 5/3/2011 | $2,300.00 | TSB xxxxx1013 | FIB xxxxxx8861 |
| 202. | 5/3/2011 | $2,300.00 | TSB xxxxx1013 | xxxxxx1351 Painted Sky |
| 203. | 6/3/2011 | $2,300.00 | TSB xxxxx1013 | FIB xxxxxx8861 |
| 204. | 6/3/2011 | $2,300.00 | TSB xxxxx1013 | xxxxxx1351 Painted Sky |
| 205. | 7/5/2011 | $2,300.00 | TSB xxxxx1013 | FIB xxxxxx8861 |
| 206. | 7/5/2011 | $2,300.00 | TSB xxxxx1013 | xxxxxx1351 Painted Sky |
| 207. | 8/3/2011 | $2,300.00 | TSB xxxxx1013 | FIB xxxxxx8861 |
| 208. | 8/3/2011 | $2,300.00 | TSB xxxxx1013 | xxxxxx1351 Painted Sky |
| 209. | 9/6/2011 | $2,300.00 | TSB xxxxx1013 | FIB xxxxxx8861 |
| 210. | 9/6/2011 | $2,300.00 | TSB xxxxx1013 | xxxxxx1351 Painted Sky |
| 211. | 10/3/2011 | $2,300.00 | TSB xxxxx1013 | FIB xxxxxx8861 |
| 212. | 10/3/2011 | $2,300.00 | TSB xxxxx1013 | xxxxxx1351 Painted Sky |
| 213. | 11/3/2011 | $2,300.00 | TSB xxxxx1013 | FIB xxxxxx8861 |
| 214. | 11/3/2011 | $2,300.00 | TSB xxxxx1013 | xxxxxx1351 Painted Sky |
| 215. | 12/5/2011 | $2,300.00 | TSB xxxxx1013 | FIB xxxxxx8861 |
| 216. | 12/5/2011 | $2,300.00 | TSB xxxxx1013 | xxxxxx1351 Painted Sky |
| 217. | 1/3/2012 | $2,300.00 | TSB xxxxx1013 | FIB xxxxxx8861 |
| 218. | 1/3/2012 | $2,300.00 | TSB xxxxx1013 | xxxxxx1351 Painted Sky |
| 219. | 2/3/2012 | $2,300.00 | TSB xxxxx1013 | FIB xxxxxx8861 |
| 220. | 2/3/2012 | $2,300.00 | TSB xxxxx1013 | xxxxxx1351 Painted Sky |
| 221. | 3/5/2012 | $2,300.00 | TSB xxxxx1013 | xxxxxx1351 Painted Sky |