IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
DIVISION



| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 15–40–M–DLC |
| Plaintiff, | |
| vs. | |
| GEORGE LESLIE MANLOVE, | |
| Defendant. | |

Before the Court is Defendant's Motion to Disqualify Counsel (Doc. 142).

For the reasons given below, the Court denies Defendant's motion.

### FACTUAL BACKGROUND

Defendant George Leslie Manlove is the former CEO of Vann's, Inc.

("Vann's"), a Montana corporation that owned and operated retail electronics and

appliance stores throughout the state before declaring bankruptcy in 2012. On

December 21, 2015, Manlove was indicted on two hundred twenty-one felony

criminal counts. The government alleges that Manlove, along with CFO Paul

Nisbet, conspired to defraud their former employer.

Before Manlove's indictment, Vann's employees brought a civil action

against Manlove and Nisbet, alleging responsibility for the corporation's

1

bankruptcy. Three members of the Vann's Board of Directors—William Honzel, Cameron Lawrence, and Chris Abess—were deposed in the civil matter as non-parties. The same three former Board members are now expected to testify in the criminal proceeding on behalf of the government.

Manlove bases his motion to disqualify on the fact that W. Adam Duerk, one of the two Assistant United States Attorneys prosecuting the case, formerly worked at the law firm that represented Honzel, Lawrence, and Abess as non-party witnesses in the civil matter. While the civil matter was pending, Duerk was a shareholder at Milodragovich, Dale & Steinbrenner, P.C. ("Milodragovich"). However, Duerk was not personally involved in the representation of Honzel, Lawrence, and Abess, and he did not work on the civil matter. (Doc. 156–1 at 5–6; 156–4 at 2–3.) Nor has Duerk had any contact with Honzel, Lawrence, and Abess on behalf of the government; his co-counsel, Zeno Baucus, has handled communications with the three former Board members and will conduct their direct examination at trial. (Doc. 156–1 at 6.)

## DISCUSSION

Manlove argues that Duerk's prosecution of this matter presents an "ethical dilemma which cannot be resolved in a manner to adequately assure the constitutional rights of Mr. Manlove are protected." (Doc. 143 at 1–2.) He

contends that Milodragovich's representation of the former Board members is imputed to Duerk, leading to violations of Montana Rules of Professional Conduct 1.6, 1.7, 1.9, 1.10, and 1.11. He has asked the Court to schedule a hearing before resolving the issue. The government makes three responsive arguments: (1) that Manlove lacks standing; (2) that the motion should be denied as untimely; and (3) that there is no conflict with the Rules. The Court determines that a hearing is unnecessary, and it agrees with the government on all three points, any one of which would be sufficient to deny Defendant's motion.

This Court's determination of whether to disqualify an attorney is reviewed for abuse of discretion. *Paul E. Iacono Structural Engr., Inc. v. Humphrey*, 722 F.2d 435, 438 (9th Cir. 1983). The issue of standing raises a question of this Court's authority under the United States Constitution and is therefore governed by federal law. The second and third issues raised by the government, which concern whether disqualification is necessary and appropriate, are governed by state law. *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000).

## I. Standing

Manlove lacks standing to call for Duerk's disqualification. Because neither Duerk nor his former law firm ever represented Manlove, Duerk has no duty to Manlove under the cited Montana Rules of Professional Conduct.

3

This Court's powers are limited by the Constitution. It may decide only "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1. It has no power to adjudicate a dispute brought by one who lacks standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."). Standing may be found only where where a party has "suffered an 'injury in fact'–an invasion of a legally protected interest . . . ." *Id.* (citations omitted). Thus, a litigant generally may not raise another person's legal rights. *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Here, Manlove has no "legally protected interest." In the words of the Second Circuit, "[a]s a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification." *United States v. Rogers*, 9 F.3d 1025, 1031 (2d Cir. 1993) (quoting *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 53, 88 (5th Cir. 1976)). As the annotation to Model Rule 1.9 states: "The majority view is that only the former client has standing to move for disqualification, unless an 'unethical change of sides [is] manifest and glaring' or an ethical violation is open and obvious." Ellen J. Bennett et al., *Annotated Model Rules* 173 (7th ed. 2011) (citing *Yarn Processing*, 530 F.2d at 83). The Rules of Professional Conduct governing

4

conflicts of interest protect former and concurrent clients, not third parties such as Manlove, and Manlove cannot enforce those clients' rights. Nor can there be any violation so severe that it may interfere with Manlove's constitutional rights. As a partner at Milodragovich, Duerk received no confidential client information; as a prosecutor, he has avoided contact with the former clients. (Docs. 156–1 at 5–7, 156–2, 156–3, 156–4 at 2–3.)

Although the Court's resolution of the issue of standing is dispositive of Defendant's motion, the Court nonetheless addresses the remaining two issues raised by the parties in their briefs.

## II. Timeliness

Under Montana law, "a former client who is entitled to object to an attorney representing an opposing party based on a conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right." *Schuff v. A.T. Klemens & Sons*, 16 P.3d 1002, 1013 (Mont. 2000). "Alleged lawyer conflict of interest problems should be brought up as early as possible so that a determination may be made that does not unduly prejudice any party." *In re Guardianship of Mowrer*, 979 P.2d 156, 160 (Mont. 1999). Even where a conflict of interest exists, "failure to object and move to disqualify within a reasonable time" may lead to waiver. *Id.*

5

Trial in this matter is now set for January 17, 2017. This matter has been pending for nearly a year, and Manlove's attorney has been aware of the alleged conflict of interest since at least July 8, 2016. (Doc. 156–1 at 4.) If the Court were to grant Manlove's motion, it would cause significant prejudice to the government, as Duerk has worked on this case from its inception and is now preparing for trial. Even if there had been a violation of the Montana Rules of Professional Conduct, Manlove waived the issue by neglecting to raise it until shortly before trial. However, as discussed below, there was no violation.

### III. Conflict of Interest

Manlove cites to Rules 1.6, 1.7, 1.9, 1.10, and 1.11 of the Montana Rules of Professional Conduct to support his argument that disqualification is necessary. In its response brief, the government contends that only Rules 1.7 and 1.9 are relevant. Here, the umbrella rule is Rule 1.11(d), which governs conflicts of interest for current government lawyers. Rule 1.11(d) in turn cites to Rules 1.7 and 1.9, applying these rules to government lawyers, and so these provisions must factor into the Court's analysis.

Rule 1.10 ("Imputation of Conflicts of Interest") is irrelevant, as it provides that "[t]he disqualification of lawyers associated in a firm with former or current government lawyers is governed by Rule 1.11." Mont. R. Prof. Conduct 1.10(e).

Similarly, Rule 1.6 ("Confidentiality of Information") is not at issue here, as Duerk does not have confidential information about the former Board members, and even if he had, he has not revealed such information.

### A. Rule 1.11(d)

Rule 1.11(d) provides:

> Except as law may otherwise expressly permit, a lawyer currently serving as a public officer or employee:
> (1) is subject to Rules 1.7 and 1.9; and
> (2) shall not:
> (i) participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment, unless the appropriate government agency gives its informed consent, confirmed in writing; or
> (ii) negotiate for private employment with any person who is involved as a party or as lawyer for a party in a matter in which the lawyer is participating personally and substantially, except that a lawyer serving as a law clerk to a judge, other adjudicative officer or arbitrator may negotiate for private employment as permitted by Rule 1.12(b) and subject to the conditions stated in Rule 1.12(b).

No standalone violation of Rule 1.11(d) has been asserted, although Manlove cites to Rule 1.11(d)(2)(i) in his brief. It is clear that there has been no violation of 1.11(d)(2)(i), as Duerk did not participate in the civil matter, let alone "personally and substantially."

### B. Rule 1.7

Nor does Rule 1.7 apply. As relevant, that rule states:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
    (1) the representation of one client will be directly adverse to another client; or
    (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
    (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
    (2) the representation is not prohibited by law;
    (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
    (4) each affected client gives informed consent, confirmed in writing.

Here, there is no "concurrent conflict of interest," as Duerk never represented the Vann's Board members. Thus, there can be no actual or threatened violation of Rule 1.7.

However, even if the Rule had been triggered, there is no direct adversity between the Board member's positions as non-party witnesses in the civil matter and their positions as witnesses called by the government in the present matter. Nor is there a "significant risk" that Duerk's representation of the government will

be limited by any duty to the Board members. First, Duerk does not have any confidential information about the Board members, and there is no threatened breach of confidentiality. Second, Manlove has been unable to point to any other responsibility Duerk holds as to his former law firm's clients. Third, there appears to be no conflict between the interests of the Board members and the government. Finally, Duerk has not had contact with the Milodragovich clients, either as a shareholder for the firm or as a government lawyer. Duerk's peripheral involvement with the same witnesses in two separate matters does not give rise to a concurrent conflict under Rule 1.7.

### C.  Rule 1.9

Rule 1.9 more closely fits the issue presented than any of the other Rules cited by Manlove. However, it still fails to raise a threat of a conflict of interest. Rule 1.9 provides:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
>
> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client:
>   (1) whose interests are materially adverse to that person; and
>   (2) about whom the lawyer had acquired information protected

9

> by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing.
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
>> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Manlove primarily grounds his argument in Rule 1.9(a). However, Rule 1.9(a) is inapplicable. As discussed above, because Duerk is now a government attorney, Milodragovich's conflicts are not imputed to Duerk under Rule 1.10, and 1.9(a)—unlike 1.9(b) and 1.9(c)—does not expressly apply to clients represented by an attorney's former firm.

Additionally, while the civil and criminal matters may be "substantially related" due to their shared nexus, the government's position is not "materially adverse" to that held by the Board members in the civil litigation. Indeed, the Board members did not have an established position in the civil litigation, which has long since settled, as they were non-party witnesses. Nor do they have a clear position in the present controversy; they are not criminal defendants but witnesses likely to be called by the government.

Rule 1.9(b) is similarly inapplicable. Setting aside the required element of material adversity—which does not exist here—Duerk never acquired confidential information about the Vann's Board members. Nor may Manlove call for disqualification under Rule 1.9(c). Duerk cannot use or reveal information about the former Board members when he has not acquired any such information.

Manlove has failed to meet his burden of showing that disqualification is appropriate, let alone necessary. First, Manlove lacks standing to raise the issue of disqualification based on a prosecutor's alleged conflict of interest with a third party. Second, the motion was untimely filed, and the delay in seeking disqualification cannot be excused. Finally, Manlove's arguments fail on the merits, as Manlove has shown neither the existence of a conflict of interest nor the likelihood of prejudice.

Accordingly, IT IS ORDERED that Defendant's Motion to Disqualify Assistant United States Attorney W. Adam Duerk (Doc. 142) is DENIED.

DATED this 20th day of December, 2016.

*Dana L. Christensen*
Dana L. Christensen, Chief Judge
United States District Court