IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GEORGE LESLIE MANLOVE,<br><br>Defendant. | CR 15-40-M-DLC<br><br>FINDINGS &<br>RECOMMENDATION |

On February 3, 2017, Defendant George Manlove was convicted of various criminal offenses including conspiracy (18 U.S.C. § 371), wire fraud (18 U.S.C. §§ 1343 and 2), and bank fraud (18 U.S.C. §§ 1344 and 2). Chief Judge Dana L. Christensen imposed sentence and entered judgment against Manlove. Judge Christensen referred this matter to the undersigned United States Magistrate Judge pursuant to 18 U.S.C. §3664(d)(5) and (6) for the limited purpose of conducting a hearing on all matters related to restitution and determining an appropriate amount of restitution to be imposed upon Manlove. (Doc. 335 at 2.) On June 19, 2017, the Court convened a restitution hearing. Having considered the evidence and the testimony presented at the hearing, the parties' respective legal arguments, and the

1

record as a whole, the undersigned finds that the United States failed to meet its burden of proof for the imposition of restitution, and recommends no restitution be imposed against Manlove.

I. **Background**

Manlove formerly served as the Chief Executive Officer, and as a member of the Management Team for Vann's Inc. – a Montana corporation in the business of selling home electronics and appliances until it filed for bankruptcy in August 2012.

In 1993 Vann's created an Employee Stock Ownership Plan ("ESOP") designed to provide employees with funds for retirement. By 2005 the ESOP held 100% of the shares of Vann's stock, and roughly 200 Vann's employees participated in the ESOP.

Manlove's criminal convictions stem from certain instances of conduct in which he engaged during his tenure as the Chief Executive Officer and member of the Management Team beginning in 2006 and continuing until Vann's went bankrupt. Manlove was convicted of various acts of fraud upon Vann's, its shareholders, the ESOP and its beneficiaries.

The presentence investigation report prepared in this case identified five specific individuals, each of whom were employees of Vann's at one time that

participated in the ESOP.  These five individuals sought specific items of restitution for losses they suffered as a result of Vann's insolvency and the ESOP's loss in value because of the diminished value of Vann's stock.

During the restitution hearing in this matter, the United States generally conceded that it could not sufficiently and fully substantiate the losses the five individuals claimed for purposes of imposing restitution against Manlove.  (Doc. 358 at 92-104.)  But it urged the Court to adopt an alternative loss analysis which compares the value of the ESOP shares in 2009 with the value of the shares for which the participants were partially compensated in 2015 through Vann's bankruptcy proceedings.  (Doc. 358 at 104.)

The United States presented expert testimony from John Boyle, a certified public accountant, who examined Vann's business operations, its business decisions, its financial matters and Manlove's conduct within Vann's.  Mr. Boyle relied upon an independent valuation of Vann's and, correspondingly, the ESOP's stock share values which concluded that as of the end of 2009 the total value of Vann's was over $8 million translating to $414.51 per share.  (Doc. 358 at 21.)  Then in 2015, as the result of a settlement in an underlying civil action against Manlove and others, Vann's bankruptcy proceedings resulted in a distribution of a little over $4 million to the ESOP participants which partially compensated the

participants at the rate of $367.37 per share. (Doc. 358 at 24.) Mr. Boyle testified that the difference in share value at those two points in time – a difference of $47.14 – represents the remaining uncompensated loss in value that the ESOP and its participants experienced. (*Id*.) Based on the total number of shares, that total loss was $838,891. (*Id*.) Mr. Boyle stated that if the ESOP participants were compensated in this amount it would bring them "back to the high point of 2009[.]" (Doc. 358 at 24-25.) Therefore, the United States requests that the Court impose restitution against Manlove in the amount of $838,891. (Doc. 358 at 107.)

## II. Discussion

### A. Restitution Victims and Amounts Identified in the Presentence Report

Manlove objects to the imposition of any restitution beyond what was expressly identified in the presentence investigation report, i.e. the specific claims of the five individual employees and ESOP participants amounting to approximately $256,000. He argues the specific $838,891 loss the United States now requests was not expressly identified as a loss in the presentence investigation report. Manlove contends the United States may only pursue restitution for the five identified individual, not the subsequently identified loss of $838,891. The Court disagrees.

4

The restitution statutes broadly provide restitution for "any victim" (18 U.S.C. § 3663(a)(1)(A)), and "any person directly harmed by the defendant's criminal conduct" (18 U.S.C. § 3663A(a)(2)). Consequently, the plain language of the statutes "gives the district court discretion to identify victims other than those brought to its attention by the government or the probation office." *United States v. Gamma Tech Industries, Inc.*, 265 F.3d 917, 924 (9th Cir. 2001). Therefore, this Court is not limited to imposing only those restitution losses identified in the presentence investigation report.

### B. Res Judicata

Manlove next objects to the imposition of restitution on the ground it is barred under the doctrines of res judicata or collateral estoppel. Manlove's co-defendant in this case, Paul Nisbet, was also convicted of conspiracy in violation of 18 U.S.C. § 371, and the United States sought restitution from Nisbet for, inter alia, the loss in value of the ESOP. (Doc. 152 at 3.) But after Nisbet's restitution hearing this Court found the United States had not met its burden of proving that the loss in the value of the ESOP was the direct and foreseeable result of Nisbet's conduct. (Doc. 207 at 2.) Consequently, Manlove argues that pursuant to the doctrines of res judicata or collateral estoppel, the Court's decision to not impose restitution against Nisbet for the ESOP's loss in value precludes the United States

5

from now seeking restitution from Manlove for the same loss. But the Court concludes the asserted equitable doctrines are inapplicable in this case.

Indeed, the doctrines of res judicata and collateral estoppel can apply in criminal proceedings in some situations. *United States v. Cejas*, 817 F.2d 595, 598 (9th Cir. 1987). But those equitable doctrines are not applicable where, as here, the restitution provisions of the Mandatory Victims Restitution Act of 1996, 18 U.S.C. §§ 3663A-3664 ("MVRA") apply.

In *United States v. Williams*, 612 F.3d 500 (6th Cir. 2010), the United States represented to the court that the victims' losses amounted to $400,000, and the court imposed restitution in that amount against one of three co-defendants convicted of a conspiracy. 612 F.3d at 509-10. The United States then sought, and the court imposed, a restitution award in an amount a little over $800,000 against another co-defendant representing the same victims' total losses due to that co-defendant's conviction for the same conspiracy. *Id*. at 509.

On appeal, the co-defendant against whom the $800,000 restitution award was imposed argued that the governments' earlier representation that the victims' loss was $400,000 collaterally estopped the government from pursuing a larger amount in restitution against him. *Williams*, 612 F.3d at 509. But the appellate court concluded that the MVRA precluded the defendant's collateral estoppel

6

theory.

The mail fraud and wire fraud convictions in *Williams*, as in this case, invoked the comprehensive and mandatory restitution provisions of the MVRA which require restitution for "each victim in the full amount of each victim's losses[.]" 18 U.S.C. § 3664(f)(1)(A). *Williams*, 612 F.3d at 503 and 509. Additionally, the MVRA provides that where two or more defendants are convicted in the same case, "the court may make each defendant liable for payment of the full amount of restitution[.]" 18 U.S.C. § 3664(h).

In *Williams*, the court considered the defendant's collateral estoppel theory in the context of the MVRA's mandatory restitution provisions. The *Williams* court noted that the estoppel doctrines are equitable in nature and are invoked at the discretion of the courts. *Williams*, 612 F.3d at 510 (quoting *New Hampshire v. Maine*, 520 U.S. 742, 750 (2001)). It further noted that the standards for applying estoppel against the government are more stringent than those applicable to private parties and, as a result, estoppel is rarely applied against the government. *Id*. at 511. Thus, the court concluded that despite the Assistant United States Attorney's errors in seeking only $400,000 in restitution against the first co-defendant, the comprehensive and "mandatory language of the MVRA trumps the equitable policies underlying the discretionary doctrines of collateral estoppel and judicial

estoppel." *Id*. at 513 (citing cases refusing to apply estoppel against the government based on misrepresentations made by an individual government official). Accordingly, the appellate court concluded the United States was not collaterally estopped from seeking an amount of restitution against one co-defendant that was larger than the amount previously sought against another co-defendant for the same loss. *Id*. at 514.

The Court finds the rationale and analysis employed by the *Williams* court is compelling. Despite the United States' failure to meet its burden of proof with respect to the imposition of restitution against Nisbet, the United States remains under a mandatory obligation to obtain the full amount of restitution for the conspiracy victims' losses in this case. *See Williams*, 612 F.3d at 513. And the Court is independently obligated to order restitution in the full amount of the victims' losses notwithstanding the United States' prior failure to obtain restitution from Nisbet. 18 U.S.C. § 3664(f)(1)(A). Furthermore, Manlove bears the risk of becoming financially responsible for the full amount of all losses – joint and several liability – since this case involves two defendants each of whom may have contributed to the losses. 18 U.S.C. § 3664(h).

Therefore, the Court adopts the holding in the analogous circumstances of the *Williams* case, and concludes that the mandatory scheme of the MVRA

precludes application of res judicata or collateral estoppel in this case. Defendant's objection is overruled.

### C. Restitution Under the MVRA - Legal Standards

Restitution is mandatory for a conviction based on an offense against property committed by fraud or deceit. 18 U.S.C. § 3663A(c)(1)(A)(ii). Manlove's fraud convictions fall within this mandatory restitution provision. *See United States v. Thomsen*, 830 F.3d 1049, 1065 (9th Cir. 2016).

The MVRA requires the district court to "order restitution to each victim in the full amount of each victim's losses as determined by the court[.]" 18 U.S.C. § 3664(f)(1)(A). "Any dispute as to the proper amount or type of restitution shall be resolved by the court by a preponderance of the evidence." 18 U.S.C. § 3664(e).

Restitution "may only compensate a victim for actual losses caused by the defendant's conduct." *United States v. Gamma Tech Industries, Inc.*, 265 F.3d 917, 926 (9th Cir. 2001). "Actual loss" "is determined by comparing what actually happened with what would have happened if the defendant had acted lawfully." *United States v. Hunter*, 618 F.3d 1062, 1064 (9th Cir. 2010).

The statute defines the term "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme,

conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy or pattern." 18 U.S.C. § 3663A(a)(2). Thus, restitution is limited to losses "directly resulting" from the defendant's criminal conduct, meaning "the conduct underlying the offense of conviction must have caused a loss [...], but the loss cannot be too far removed from that conduct." *Gamma Tech*, 265 F.3d at 927 and 928. The chain of causation cannot extend so far as to be unreasonable. *Id*. at 928.

The Ninth Circuit has interpreted the causation standard in 18 U.S.C. § 3663A(a)(2) to mean that restitution "may be awarded only for losses for which the defendant's conduct was an actual *and* proximate cause." *United States v. Swor*, 728 F.3d 971, 974 (9th Cir. 2013) (emphasis in original). "'But for' cause is insufficient." *Swor*, 728 F.3d at 974 (citation omitted). In sum, the United States must "show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal nexus between the conduct and the loss is not too attenuated (either factually or temporally)." *Swor*, 728 F.3d at 974 (quoting *Gamma Tech*, 265 F.3d at 928)).

And although a Defendant's conduct need not be the sole cause of a loss, "any subsequent action that contributes to the loss, such as an intervening cause, must be directly related to the defendant's conduct." *Gamma Tech*, 265 F.3d at

10

928 (citations omitted). An unrelated, intervening cause of a loss defeats a claim for restitution. *Id*. (citing *United States v. Meksian*, 170 F.3d 1260, 1263 (9th Cir. 1999)).

Where, as here, the offense of conviction involves a scheme or conspiracy, the term "victim" is more broadly defined to include "any person directly harmed by the defendant's criminal conduct in the course" of the scheme or conspiracy.[1] 18 U.S.C. § 3663A(a)(2). *United States v. Thomsen*, 830 F.3d 1049, 1064 (9th Cir. 2016). Restitution in such cases "is not limited to harm caused by the particular counts of conviction, but may be based on related, uncharged conduct that is part of a fraud scheme[.]" *Thomsen*, 830 F.3d at 1066.

Finally, the United States bears the brunt of the burdens of proof applicable in restitution matters. "The government bears the burden of proving [by a preponderance of the evidence] that a person or entity is a victim for purposes of restitution, [citation omitted], and of proving the amount of the loss." *United States v. Waknine*, 543 F.3d 546, 556 (9th Cir. 2008); 18 U.S.C. § 3664(e). And the United States is obligated to establish the causal connection between the

---

[1] Manlove's convictions for conspiracy and mail fraud, which require a "scheme" as an element, place the issue of restitution under this broader definition of a victim and the losses that may be recovered through restitution. *Thomsen*, 830 F.3d at 1065 n.13 and 1066.

defendant's conduct and the victims' losses. *See Swor*, 728 F.3d at 974.

At Manlove's restitution hearing, the United States presented Mr. Boyle's testimony on the issue of Manlove's conduct and its causal nexus to the loss reflected in the ESOP's share value. Mr. Boyle identified six decisions Manlove made on behalf of Vann's which were adverse to Vann's financial condition. Manlove made the referenced decisions during the relevant time period of the conduct for which he was convicted in this matter. Those six matters are summarized as follows:

1. Beginning in 2005, Manlove was responsible for structuring several leases in which Vann's leased real property from Manlove's business entities, and by 2009 the total lease payments were over $800,000 annually. (Doc. 354-1 at 2.) Also, Vann's spent significant amounts of money to build the buildings that it leased, and it transferred that value to the lessors. In one lease situation Vann's transferred approximately $700,000 of value to the lessors. (Doc. 358 at 38.) These events were charged in the Second Superseding Indictment against Manlove. (Doc. 358 at 12.)

2. Manlove was responsible for having Vann's pay for his advanced education and schooling in an amount a little over $171,000. (Doc. 354-1 at 2.)

3. Manlove had Vann's make a significant investment, for diversification, in two retail ventures: the ON Store and the Big Sky Country. This "resulted in an approximate $2 million loss" for Vann's. (Doc. 358 at 13.)

4. Manlove arranged for Vann's to purchase stock he, or his wife, owned at the rate of $14,000 per month, for a total of $1.3 million

paid for the stock purchase. (Doc. 354-1 at 2.)

5. Manlove was responsible for having Vann's (a) buy real property lots in a high-end, luxury subdivision – the Rock Creek Cattle Company, (b) build a house in the subdivision to sell, and (c) pay expensive dues and membership fees for the resort in the amount of approximately $200,000. (Doc. 358 at 14.) Vann's lost approximately $250,000 on the house it built. (*Id*.)

6. Manlove obtained reimbursements from Vann's for significant personal expenses in the amount of approximately $523,000 (doc. 354-1 at 3), and obtained large employment compensation bonuses from Vann's each year for a total of a little over $200,000. (Doc. 354-1 at 3.)

(Doc. 358 at 10-11.)

Mr. Boyle testified as to the causal nexus between Manlove's six identified decisions and Vann's subsequent insolvency, bankruptcy filing, and ultimate demise. He testified that each individual business decision, by itself, did not cause Vann's insolvency and financial ruin. (Doc. 358 at 12-15.) But, considering the impact of all six decisions together, Mr. Boyle concluded they "contributed to the ultimate decline of Vann's." (Doc. 358 at 11, 16 and 17.)

Mr. Boyle, however, testified that several other independent factors contributed to Vann's decline. He identified the following: (1) policies imposed upon Vann's by manufactures with respect to the sales of their products; (2) the declining real estate market; and (3) the low stock market. (Doc. 358 at 18.) He

13

testified that these "economic factors" also contributed to Vann's decline. (*Id.*)

Despite the existence of the referenced "economic factors," Mr. Boyle ultimately opined that if Manlove's six identified decisions had not occurred, "Vann's would have had sufficient capital to continue operating." (Doc. 358 at 19.) He agreed that "but for Mr. Manlove's conduct, the ESOP plan participants would not have been affected by bankruptcy[.]" (Doc. 358 at 25.)

At the hearing, the Assistant United States Attorney presented a summation of the government's case upon questioning by the Court. He addressed the issue of Manlove's actual conduct for which he was convicted. The Attorney conceded that two of the six business decisions identified by Mr. Boyle were not matters that formed the basis for any of the criminal charges against Manlove. He agreed Manlove's conduct in having Vann's diversify its investments resulting in a $2 million loss was not a criminal matter charged against Manlove. (Doc. 358 at 123.) And the Attorney conceded that Manlove's conduct in arranging for Vann's to pay him a total of $1.3 million for the purchase of his and his wife's stock was not criminal conduct that was charged against Manlove. (*Id.*) Furthermore, the United States did not otherwise establish, or attempt to establish, that either of these two decisions were acts of criminal conduct. Thus, based on the evidence presented by the United States, the two decisions constitute, at worst, non-

criminal, bad business decisions.

As noted, because Manlove's convictions involve a conspiracy or scheme, the restitution statutes expand the scope of the harm for which restitution can be imposed. The courts may order restitution for "acts of related conduct for which the defendant was not convicted." *United States v. Johnson*, 854 F.3d 1098, 1101 (9th Cir. 2017) (citations omitted). "Restitution may be ordered for losses to persons harmed in the course of the defendant's scheme even beyond the counts of conviction." *Id*. (quoting *United States v. Rutgard*, 116 F3d 1270, 1294 (9th Cir. 1997)). "'[R]estitution may be ordered for all persons directly harmed by the entire scheme' and 'is thus not confined to harm caused by the particular offenses for which [the defendant] was convicted.'" *Id*. at 1102 (quoting *United States v. Booth*, 309 F.3d 566, 576 (9th Cir. 2002)).

But the broad scope of restitution permitted in crimes involving a scheme or conspiracy retains some limitations imposed by the language of the statute – it does not seek to impose criminal restitution for non-criminal conduct. Specifically, the language of the statute permits restitution only for "any person directly harmed by the defendant's *criminal* conduct in the course of the scheme, conspiracy or pattern." 18 U.S.C. § 3663A(a)(2) (emphasis added). *See also Gamma Tech*, 265 F.3d at 927 n.10. Thus, the express language of the statute does

not encompass restitution for harm caused by non-criminal conduct. It only encompasses harm caused by a defendant's *criminal* conduct that is not charged against the defendant. *See United States v. Brock-Davis*, 504 F.3d 991, 999-1000 (9th Cir. 2007) (permitting restitution for losses caused by the defendant's related criminal conduct that was not charged in the indictment, and where the specific victim who suffered the losses was not named in the indictment).

As a further limitation, a defendant's other criminal conduct for which restitution may be imposed must be sufficiently related to the defendant's conduct for which he was convicted. Restitution may include compensation for harm caused by acts of "*related conduct* for which the defendant was not convicted." *Brock-Davis*, 504 F.3d at 999 (emphasis added) (citation and quotation omitted) (referring to conduct related to the conduct for which the defendant was convicted). The restitution order must be "based on related [...] conduct that is part of a fraud scheme[,]" and the "harm to the victim must [...] be closely related to the scheme, rather than tangentially linked." *In re Her Majesty the Queen in Right of Canada*, 785 F.3d 1273, 1276 (9th Cir. 2015) (citations omitted). *See also United States v. Thomsen*, 830 F.3d 1049, 1066 (9th Cir. 2016). In sum, restitution is proper for crimes involving a scheme or conspiracy only if the restitution is "based on related, uncharged conduct that is part of a fraud scheme." *Id*.

Again, the United States conceded Manlove's diversification investment decision and his stock purchase decision were not acts or conduct for which he was charged. Furthermore, the United States did not present any evidence to suggest Manlove's conduct in these two decisions was uncharged criminal conduct "related" to his criminal conduct for which he was convicted, or that it was part of Manlove's criminal conspiracy or scheme. The government did not attempt, and thus failed, to meet its burden of proof in this regard. Therefore, the Court concludes it cannot impose restitution for losses caused by Manlove's non-criminal conduct in the two conceded business decisions.

Consequently, the Court is left with deciding whether Manlove's conduct in the four remaining business decisions which formed part of his criminal conduct in this case were the actual and proximate cause of Vann's insolvency, bankruptcy, and ultimate demise.² The Court must make this decision as to causation in view

---

²Mr. Boyle admitted he did not know what specific conduct Manlove committed that formed the basis for his criminal convictions, and he did not know the offenses for which Manlove was convicted. (Doc. 358 at 42.) And he agreed that since he was not aware of the crimes of conviction he did not "know whether those crimes caused a loss to the shareholders of the ESOP[.]" (*Id*.) And Mr. Boyle was not able to answer the question of whether Manlove's crimes of conviction caused Vann's bankruptcy. (Doc. 358 at 50.) Nonetheless, based on the United States' representations at the hearing, the Court is satisfied Manlove's four business decisions are sufficiently related to the conduct for which Manlove was convicted.

of the additional factors that contributed to the cause of Vann's failure which are: (1) Manlove's two apparently unrelated, non-criminal business decisions, and (2) the three "economic factors" identified by Mr. Boyle. Significantly, Mr. Boyle testified that each of Manlove's identified six business decisions was not sufficient, by itself, to cause Vann's to fail. And although Mr. Boyle testified that those six business decisions together caused Vann's to fail, the United States did not present either testimony from Mr. Boyle, or any other evidence, asserting that Manlove's remaining four criminal decisions were the actual and proximate cause of Vann's failure and the resulting loss in the value of the ESOP shares. The Court would be left only to speculate whether the remaining four decisions caused Vann's to fail in the context of all the other causative factors. There simply is no evidence in the record on which the Court can make a finding as to the causal nexus between the remaining four decisions and the ESOP's loss in value.

Thus, the United States failed to show that the loss in the ESOP share value would not have occurred but for Manlove's four criminal business decisions, and that the causal nexus between those four decisions and the loss is not too attenuated. Consequently, the United States' request for restitution in the amount of $838,891 should be denied.

## IV. Conclusion

For the reasons discussed, IT IS RECOMMENDED that no restitution be imposed against Manlove.

DATED this 22nd day of August, 2017.

_____
Jeremiah C. Lynch
United States Magistrate Judge